# In the United States District Court
## for the Southern District of Georgia
### Savannah Division

| | |
|---|---|
| SULLIVAN'S ADMINISTRATIVE MANAGERS II, LLC, | * * * |
| Plaintiff, | * * |
| vs. | * * |
| GUARANTEE INSURANCE CO., ULLICO CASUALTY CO., and PATRIOT NATIONAL INSURANCE GROUP, INC., | * * * * |
| Defendants. | * * |

CV 412-212

## ORDER

Presently before the Court are multiple motions for Summary Judgment filed by Plaintiff and Defendants. See Dkt. Nos. 30; 43; 48; 51. Upon due consideration, Plaintiff's Motion for Partial Summary Judgment is **DENIED** (Dkt. No. 30). Defendant Patriot's Motion for Summary Judgment on Plaintiff's claims against it is **GRANTED** (Dkt. No. 43). Defendant Guarantee's Motion for Summary Judgment on Plaintiff's claims against it is **DENIED** (Dkt. No. 51). Defendant Guarantee's Motion for Summary Judgment on its counterclaims is **DENIED** (Dkt. No. 48).

1

# I. **FACTUAL BACKGROUND**

This action is predicated on alleged overbilling and misrepresentations related to workers' compensation policies. See Dkt. No. 1. The relevant facts are taken principally from the parties' Statements of Material Facts and responses thereto. See Dkt. Nos. 30-1; 37-2; 43-2; 48-5; 51-1; 57-1; 61-1; 65-1.[1] Pursuant to Federal Rule of Civil Procedure 56(e) and Local Rule 56.1, all material facts not specifically controverted by specific citation to the record are deemed admitted, unless otherwise inappropriate.

## A. Parties[2]

Plaintiff, Sullivan Administrative Managers II, LLC, is a professional employer organization that provides health insurance, payroll, human resources, and workers' compensation insurance for its customers' employees.

Defendant Guarantee Insurance Company ("Defendant Guarantee") is an insurance company authorized to provide

---

[1] The Court did not credit alleged facts that were unsupported by a party's citation to the record.
[2] Defendant Ullico Casualty Co. was voluntarily dismissed from this action. See Dkt. No. 86.

workers' compensation and employer liability insurance in Georgia, Florida, and other states. Dkt. Nos. 51-1 ¶ 1; 65-1 ¶ 1. Defendant Guarantee is a member of the National Council on Compensation Insurance ("NCCI"). Dkt. Nos. 51-1 ¶ 1; 65-1 ¶ 1. Defendant Guarantee provides standard policies and high deductible policies for workers' compensation insurance.

Defendant Patriot National Insurance Group, Inc. ("Defendant Patriot") is Defendant Guarantee's parent company. Dkt. No. 48-2 ¶ 2.

## B. The NCCI

The NCCI is the ratemaking entity in Georgia, Florida, and other states. See Dkt. Nos. 51-1 ¶ 9; 65-1 ¶ 9. In those states, the NCCI files classifications, rates, and rules that the respective state's departments or commissioners of insurance have approved. Dkt. Nos. 51-1 ¶ 9; 65-1 ¶ 9.

In states where workers' compensation carriers provide coverage, such carriers must follow the directives and determinations of that state's department or commissioner of insurance. Dkt. Nos. 51-1 ¶ 11; 65-1 ¶ 11. Thus, Defendant Guarantee must follow and use the classifications, rates, and rules filed by the NCCI. Dkt. Nos. 51-1 ¶ 9; 65-1 ¶ 9.

3

AO 72A
(Rev. 8/82)

Defendant Guarantee must also comply with the rating plans that are filed with and approved by the applicable state's regulatory authority. Dkt. Nos. 51-1 ¶ 10; 65-1 ¶ 10.

C. The Policies

In June 2008, June 2009, June 2010, and June 2011, Defendant Guarantee issued workers' compensation policy numbers GPEO176000001-108 ("2008 Policy"), GPEO176000001-109 ("2009 Policy"), GPEO176000001-110 ("2010 Policy"), and GPEO176000001-111 ("2011 Policy"). Dkt. Nos. 51-1 ¶ 2-5; 65-1 ¶ 2-5. The policies had the same terms.

Plaintiff is an additional named insured on all four (4) policies (hereinafter "the Policies"). Dkt. Nos. 51-1 ¶ 6; 65-1 ¶ 6. The parties dispute who the principal named insured is on the Policies. Defendant Guarantee asserts that the Policies were issued to Sullivan Administrative Managers I, LLC ("SAM I"). Dkt. No. 51-1 ¶¶ 2-5. Plaintiff asserts that the Policies were issued to it. Dkt. Nos. 30-3 ¶¶ 3-4; 62-4 ¶¶ 4-5.

Arthur J. Gallagher RMS, Inc. ("Gallagher") was the agent at the time that SAM I (or Plaintiff) executed the Policies on behalf of itself and the additional named insureds. Dkt. Nos. 51-1 ¶ 7; 65-1 ¶ 7.

4

The Policies have multiple sections.  See, e.g., Dkt. No. 30-6; 30-7.  The Policies' General Section contains standard language drafted by the NCCI.  Dkt. No. 51-1 ¶ 16.  It is part of the standard workers' compensation policy that carriers are required to use.  Id.  The terms and conditions of the Policies' General Section do not vary.  The Policies state

> All premium for [these Policies] will be determined by our manuals of rules, rates, rating plans and classifications.  We may change our manuals and apply the changes to [these Policies] if authorized by law or a governmental agency regulating this insurance.

Dkt. Nos. 51-1 ¶ 14; 65-1 ¶ 14.  The Policies also state

> We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance.  We have the right to investigate and settle these claims, proceedings or suits.  We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Dkt. Nos. 51-1 ¶ 15; 65-1 ¶ 15.

> The Policies' Workers Compensation Insurance Section states

> We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

> 1.  reasonable expenses incurred at our request, but not loss of earnings.

> . . . and

> 5.  expenses we incur.

5

See, e.g., Dkt. No. 30-6, at 487.

The Policies have multiple endorsements. The Policies' Benefits Deductible Endorsements state, in part:

> [The insurer] will pay the deductible amount for [the insured] . . . but [the insured] must reimburse [the insurer] within 30 days after [the insurer] send[s] [the insured] notice that payment is due. . . . [The insurer] may keep the amount of unearned premium that will reimburse [the insurer] for the payment [the insurer] made. These rights are in addition to other rights [the insurer] gave to be reimbursed.

Dkt. Nos. 51-1 ¶ 23; 65-1 ¶ 23.

## D. Loss Reimbursement Plan (a/k/a Rating Plan)

The Policies were written pursuant to Defendant Guarantee's Loss Reimbursement Plan (also known as the "rating plan") that the NCCI filed with Georgia and Florida. Dkt. Nos. 51-1 ¶ 18; 65-1 ¶ 18. The parties dispute whether the Loss Reimbursement Plan was incorporated into the Policies.

Assuming that the Loss Reimbursement Plan was incorporated into the Policies, the parties dispute which option of that plan was incorporated into the Policies. Specifically, the parties dispute who is responsible for paying allocated loss adjustment expenses ("ALAE"). With respect to ALAE expenses, the Loss Reimbursement Plan has two (2) options: Option A and Option B.

AO 72A
(Rev. 8/82)

See Dkt. No. 36, at 24-25.  With respect to these options, the Loss Reimbursement Plan states

> Option A:  The insured must reimburse the insurer for the combined amount of all Benefits and Damages and all ALAE paid by the insurer because of one accident or one claim for disease, up to the Loss Reimbursement Amount.

> Option B:  The insured must reimburse the insurer only for the amount of all Benefits and Damages paid by the insurer because of one accident or one claim for disease, up to the Loss Reimbursement Amount.  The insured shall not reimburse the insurer for ALAE paid by the insurer.

See id. at 25.  The Loss Reimbursement Plan also states, "[I]f the insured does not select an Option, then Option A shall apply where available; otherwise, Option B shall apply."  See Id.

## II.  PROCEDURAL BACKGROUND

Plaintiff asserts multiple claims.[3]  First, Plaintiff asserts that Defendant Guarantee negligently misreported and overbilled Plaintiff for claims and expenses.  See Dkt. No. 1-1 ¶¶ 23-28.  Second, Plaintiff asserts a claim of negligence per se for Defendant Guarantee's alleged violation of O.C.G.A. § 33-

---

[3] Plaintiff's claim that Defendants violated Georgia's RICO statute was dismissed.  See Dkt. No. 29.

AO 72A
(Rev. 8/82)

24-47(b). See id. ¶ 27. Third, Plaintiff asserts that
Defendant Guarantee breached its express and/or implied
contracts with Plaintiff. See id. ¶¶ 29-33. Fourth, Plaintiff
asserts a claim of unjust enrichment against Defendant
Guarantee. See id. ¶ 32. Fifth, Plaintiff asserts a claim of
fraud based on Defendants' alleged representations to the NCCI.
See id. ¶¶ 34-37. Sixth, Plaintiff asserts that Defendant
Guarantee wrongly converted its funds. See id. ¶¶ 29-33.
Plaintiff also seeks punitive damages, attorney's fees, and
expenses. See id. ¶¶ 46-52.

Defendant Guarantee brought four (4) counterclaims against
Plaintiff. See Dkt. No. 7, at 14-20. These counterclaims
assert that Plaintiff breached its contracts dated 2008, 2009,
2010, and 2011 by failing to pay deductible premiums. See id.
Defendant Guarantee also seeks attorney's fees and expenses.
See id. ¶¶ 29-30.

Plaintiff filed a motion for partial summary judgment on
its claim that it does not owe ALAE. See Dkt. No. 30.
Defendants filed motions for summary judgment on Plaintiff's
claims. See Dkt. Nos. 43; 51. Defendant Guarantee filed a
motion for summary judgment on its counterclaims. See Dkt.
No. 48. These motions are fully briefed. See Dkt. Nos. 37; 40;

8

57; 71; 61; 79; 65; 80.  The Court heard oral argument regarding the motions on January 17, 2013 and May 8, 2013.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To

satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984). The court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. Am. Bankers Ins. Grp., 408 F.3d at 1331.

## IV. DISCUSSION

Prior to evaluating the parties' motions for summary judgment, the Court notes that the facts are largely contested.

10

Indeed, Plaintiff and Defendant Guarantee dispute with credible evidence multiple critical facts, including the parties to the Policies and the express and incorporated terms of the Policies. The disagreement over these critical facts looms over both Plaintiff's and Defendant Guarantee's attempt to receive summary judgment.

The Court also notes that, at oral argument regarding the various motions, the parties agreed that the Court should apply Georgia law for the purposes of evaluating their motions for summary judgment.

## A. Claims Against Defendant Guarantee

### 1. Negligence

Plaintiff asserts that Defendant Guarantee negligently misreported and overbilled Plaintiff for claims and expenses. See Dkt. No. 1-1 ¶¶ 23-28. In particular, Plaintiff asserts that Defendant Guarantee negligently billed Plaintiff for ALAE. See Dkt. No. 65, at 7-9. Plaintiff also asserts that Defendant Guarantee negligently billed Plaintiff above the agreed upon discounted rate for manual premium. See id. at 9-10. Plaintiff further asserts that, as a result of Defendant Guarantee's overbilling, Defendant Guarantee negligently reported

AO 72A
(Rev. 8/82)

Plaintiff's claim and losses to NCCI.  See Dkt. No. 1-1 ¶¶ 13, 15, 25.  Defendant Guarantee seeks summary judgment on these claims.

### a. Contracting Parties

Viewing the facts in Plaintiff's favor, the Policies are contracts between Plaintiff and Defendant Guarantee.  See Dkt. No. 62-4 ¶¶ 4-5.  Defendant Guarantee maintains that the Polices are contracts between it at SAM I.  There is evidence to support Defendant Guarantee's assertion.  See infra Parts IV.C and IV.D. However, for the purposes of Defendant Guarantee's motion for summary judgment on Plaintiff's claims, the Court must construe the evidence in Plaintiff's favor.  In so doing, the Court must conclude that the Policies are contracts between Plaintiff and Defendant Guarantee.

### b. ALAE

Construing the facts in Plaintiff's favor, Defendant Guarantee billed Plaintiff for certain costs that Plaintiff was not contractually obligated to pay.  In particular, the record reflects that Defendant Guarantee billed Plaintiff for ALAE. See Dkt. No. 62-1 ¶ 6; see also Dkt. No. 35 ¶ 10 (noting that

12

ALAE was billed). The record also reflects that Plaintiff paid the amounts billed. See Dkt. No. 65-6.

Moreover, viewing the record in Plaintiff's favor, Plaintiff was not responsible for paying ALAE prior to June 2010. See Dkt. No. 30-11, at 12. In fact, Defendant Guarantee was responsible for paying ALAE. See Dkt. No. 30-6, at 487 (noting that the insurer will pay "expenses [it] incur[s]").

Defendant Guarantee asserts that, notwithstanding the Policies' express terms, a "Loss Reimbursement Plan" (also referred to as a "rating plan") was incorporated into the Policies and the Loss Reimbursement Plan required Plaintiff to pay ALAE. See Dkt. No. 51, at 7. With respect to ALAE charges, the Loss Reimbursement Plan to which Defendant Guarantee directed the Court has two (2) options: Option A and Option B. See Dkt. No. 36, at 24-25. Option A requires the insured to reimburse the insurer for ALAE. See id. at 25. Option B does not require the insured to reimburse the insurer for ALAE. See id. If the insured does not select an option, Option A applies, where available; otherwise, Option B applies. See id.

Construing the evidence in Plaintiff's favor, the Loss Reimbursement Plan is not incorporated into the Policies. See Dkt. No. 61-2 ¶¶ 6-8 (noting that a Loss Reimbursement Plan is

13

"neither an insurance policy nor [a part] of an insurance

policy"). Thus, based on the express terms of the Policies,

Defendant Guarantee is obligated to pay all expenses it

incurred, which would include ALAE. Moreover, even if the Loss

Reimbursement Plan were incorporated into the Policies,[4] the

facts viewed in Plaintiff's favor are that Plaintiff elected

terms consistent with Option B, which required Defendant

Guarantee to pay ALAE. See id. ¶¶ 9-10.

Defendant Guarantee directed the Court to Deductible

Endorsements appended to the Policies and asserted that those

pages required Plaintiff to pay ALAE. The Deductible

Endorsements explicitly state that they apply to "benefits . . .

in excess of the deductible amount." See, e.g., Dkt. No. 30-7,

at 393, 397, 400. Construing the facts in Plaintiff's favor,

"benefits" paid by Defendant Guarantee under the Policies are

---

[4] The Court notes that, if a Loss Reimbursement Plan was incorporated into the
Policies, Defendant Guarantee failed to direct the Court to evidence of how a
contracting party would know that the Loss Reimbursement Plan cited in
Defendant Guarantee's briefs and filed on the docket was the Loss
Reimbursement Plan incorporated into the Policies. The evidence indicates
that Plaintiff never received a copy of any Loss Reimbursement Plan. See,
e.g., Dkt. Nos. 61-2 ¶ 7; 61-4 ¶ 11. Moreover, the Loss Reimbursement Plan
provided to the Court states that "[t]he application of this Plan is optional
and may be used only upon election by the insured and acceptance by the
insurer . . . ." Dkt. No. 36, at 24. Defendant Guarantee did not provide
evidence as to when and how Plaintiff elected to use this particular Loss
Reimbursement Plan.

14

distinct from the "costs" which Defendant Guarantee agreed to pay by virtue of the plain text of the Policies themselves.

Viewing the facts in Plaintiff's favor, Defendant Guarantee billed Plaintiff for ALAE. These acts were inconsistent with the express terms of the Policies. Consequently, Defendant Guarantee's motion for summary judgment on Plaintiff's negligence claim related to overbilling for ALAE is **DENIED**.

c. Manual Premium Overcharge

Construing the facts in Plaintiff's favor, Defendant Guarantee billed Plaintiff above the agreed upon discounted rate for manual premium. See Dkt. No. 61-2 ¶ 17. In particular, the record indicates that the parties agreed that Defendant Guarantee would bill Plaintiff at seventeen percent (17%) of manual premium. See id. ¶ 17; Dkt. No. 61-4 ¶ 7. The record also indicates that Defendant Guarantee billed Plaintiff at approximately twenty-six percent (26%) of manual premium. See Dkt. Nos. 61-2 ¶ 17; 61-4 ¶ 7. The record also reflects that Plaintiff paid the amounts billed. See Dkt. No. 65-6.

Because the facts can be construed to show that Defendant Guarantee billed Plaintiff at a rate higher than the parties' agreement, Defendant Guarantee's motion for summary judgment on

15

Plaintiff's negligence claim related to overbilling for manual premium is **DENIED**.

### d. Misreporting to NCCI

Construing the facts in Plaintiff's favor, Defendant Guarantee overbilled Plaintiff. Moreover, Defendant Guarantee necessarily reported Plaintiff's billed costs and expenses to the NCCI. See Dkt. No. 80, at 8-9 (arguing only that any reporting of the billed costs and expenses to the NCCI did not affect Plaintiff's experience modifier). Consequently, Defendant Guarantee's motion for summary judgment on Plaintiff's negligent reporting claim is **DENIED**.

### 2. Negligence per se

Plaintiff alleges that Defendant Guarantee violated "O.C.G.A. § 33-24-47(b) by failing to provide Plaintiff with adequate notice of [a] rate increase." See Dkt. No. 1-1 ¶ 27. Defendant Guarantee seeks summary judgment on this claim. See Dkt. No. 51, at 5.

O.C.G.A. § 33-24-47(b) requires an insurer to provide notice of termination, cancellation, nonrenewal, change that limits or restricts coverage, or increase in certain premiums,

16

including a certain changes in experience modifications. Such notice must be provided in person or by first-class mail forty-five (45) days prior to the effective date of such policy change. See O.C.G.A. § 33-24-47(b). Where the premium increases by more than fifteen percent (15%), the notice must provide the dollar amount of the increase. See id.

Defendant Guarantee maintains that the rates were in the Policies. Dkt. No. 51, at 5. Defendant Guarantee further maintains that it "will issue an endorsement advising the insured" of any pending rate changes. Dkt. No. 51, at 5. Even assuming that Defendant Guarantee's assertions are true, they do not establish that, in this case, Defendant Guarantee satisfied the notice requirements in O.C.G.A. § 33-24-47(b).

In particular, Defendant Guarantee failed to direct the Court to any evidence that it delivered such notice to Plaintiff in person or via first-class mail. Moreover, Defendant Guarantee failed to direct the Court to any evidence as to either the date that the notice was provided or the date that the rate increases went into effect. Finally, there is no indication that the alleged endorsement provided the dollar amount of the rate increase. Nor is there any evidence that the rate increase was less than fifteen percent (15%) such that

17

Defendant Guarantee was not required to provide notice of the dollar amount of the rate increase. Without evidence that the statutory notice requirements were satisfied, the Court cannot conclude that Plaintiff's claim of negligence per se for violation of O.C.G.A. § 33-24-47(b) fails as a matter of law. Consequently, Defendant Guarantee's motion for summary judgment on that claim is **DENIED**.

### 3. Breach of Contract

Plaintiff asserts that Defendant Guarantee breached its express and/or implied contracts with Plaintiff. See Dkt. No. 1-1 ¶¶ 29-33. Defendant Guarantee seeks summary judgment on these claims. See Dkt. No. 51, at 5-8.

For the same reasons that Plaintiff's claims of negligent overbilling survive Defendant Guarantee's motion for summary judgment (see supra Part IV.A.1.), Plaintiff's claims for breach of contract survive. That is, the facts construed in Plaintiff's favor suggest that: the Policies were contracts between Plaintiff and Defendant Guarantee, Defendant Guarantee failed to pay the costs that it incurred under the contract, and Defendant Guarantee billed Plaintiff for those costs. The facts construed in Plaintiff's favor also suggest that Plaintiff and

18

Defendant Guarantee agreed that Plaintiff would pay seventeen percent (17%) of manual premium and that Defendant Guarantee billed Plaintiff above this agreed-upon rate. Such facts prevent the Court from granting Defendant Guarantee's motion for summary judgment. Consequently, Defendant Guarantee's motion for summary judgment on Plaintiff's breach of contract claims is **DENIED**.

### 4. Unjust Enrichment

Plaintiff asserts that Defendant Guarantee was unjustly enriched. See Dkt. No. 1-1 ¶ 32. Defendant Guarantee seeks summary judgment on this claim. See Dkt. No. 51, at 6-7.

For the same reasons that Plaintiff's claims of negligent overbilling survive Defendant Guarantee's motion for summary judgment (see supra Part IV.A.1.), Plaintiff's claim for unjust enrichment survives.[5] Consequently, Defendant Guarantee's motion for summary judgment on Plaintiff's unjust enrichment claim is **DENIED**.

--------

[5] Plaintiff's unjust enrichment claim is merely an alternative argument to Plaintiff's breach of contract claims. It applies only to the extent that no legal contract existed between Plaintiff and Defendant Guarantee. See Ades v. Werther, 567 S.E.2d 340, 342 (Ga. Ct. App. 2002) ("[T]he theory of unjust enrichment applies only when there is no legal contract.").

AO 72A
(Rev. 8/82)

5.  Fraud

Plaintiff asserts a claim of fraud based on Defendants' alleged representations to the NCCI. See Dkt. No. 1-1 ¶¶ 34-37. Defendant Guarantee seeks summary judgment on this claim. See Dkt. No. 51, at 8-9.

The "elements of fraud and deceit in Georgia are[] (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." Johnson v. GAPVT Motors, Inc., 663 S.E.2d 779, 783 (Ga. Ct. App. 2008) (quoting City Dodge v. Gardner, 208 S.E.2d 794 (Ga. 1974)). "For purposes of summary judgment, scienter and intent to deceive are determined on the basis of the seller's knowledge of the falsity of his representations at the time made to the prospective purchaser." Id. (quoting Hudson v. Pollock, 598 S.E.2d 811 (Ga. Ct. App. 2004)).

Defendant Guarantee's brief supporting its motion appears, at least in part, to challenge the sufficiency of the allegations in Plaintiff's Complaint. However, on motion for summary judgment, the Court must consider the evidence supporting the nonmovant's claims.

AO 72A
(Rev. 8/82)

Plaintiff brings its fraud claim in the alternative to its other claims. That is, should the facts reveal that Defendant Guarantee properly billed Plaintiff for ALAE and manual premium, Plaintiff maintains that Defendant Guarantee fraudulently induced Plaintiff to enter into insurance policies that required it to pay such costs. See Dkt. No. 65, at 10.

Assuming that Defendant Guarantee correctly interpreted the parties' duties under the Policies, Plaintiff points to the following facts to support its fraud claim: First, Defendant Guarantee made false statements regarding Plaintiff's obligations to pay ALAE and the discounted manual premium rate. Second, Defendant Guarantee failed to disclose that it would use Nurse Case Managers on every claim. Third, Defendant Guarantee failed to deliver the Policies and incorporated Loss Reimbursement Plan. Fourth, Defendant Guarantee failed to itemize invoices, thus "hiding" the fact that it was charging Plaintiff for ALAE, billing at an increased premium rate, and incurring Nurse Case Manager expenses. See Dkt. Nos. 30-3; 61-2; 61-4. Taking these facts as true, a factfinder could conclude that—to induce Plaintiff to enter into the Policies at issue—Defendant Guarantee knowingly and falsely represented (1) what it would charge and (2) how it would use Nurse Case

21

AO 72A
(Rev. 8/82)

Managers. A factfinder could also conclude that Plaintiff justifiably relied on Defendant Guarantee's representations. Finally, if Plaintiff paid ALAE, was billed at an increased manual rate, and/or incurred additional Nurse Case Manager expenses as a result of Defendant Guarantee's false representations, a factfinder could conclude that those representations caused Plaintiff financial harm.[6]

After construing the facts in Plaintiff's favor, the Court cannot say that Defendant Guarantee is entitled to judgment as a matter of law. Consequently, Defendant Guarantee's motion for summary judgment on Plaintiff's fraud claim is **DENIED**.

6. Conversion

Plaintiff asserts that Defendant Guarantee wrongly converted its funds. See Dkt. No. 1-1 ¶¶ 29-33. Defendant

---

[6] Defendant Guarantee asserts that reporting costs and expenses, including ALAE, to the NCCI could not have increased Plaintiff's experience modifier or resulted in Plaintiff's increased costs. See Dkt. No. 80, at 8-9. This may be true. However, if a factfinder believes Plaintiff's evidence and finds that Defendant Guarantee misrepresented the Policies' costs from the outset, the simple fact that Plaintiff paid more than it would have paid without such misrepresentation is sufficient to meet the "damages" element of Plaintiff's fraud claim. Thus, even if Defendant Guarantee is correct about the lack of effect of the alleged fraud on Plaintiff's experience modifier, the evidence construed in Plaintiff's favor is sufficient to survive Defendant Guarantee's motion for summary judgment.

AO 72A
(Rev. 8/82)

Guarantee seeks summary judgment on this claim. See Dkt. No. 51, at 9-10.

In Georgia, "[c]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." Capital Fin. Servs. Grp., Inc. v. Hummel, 721 S.E.2d 108, 110 (Ga. Ct. App. 2011) (citation omitted). "[I]t is immaterial that such dominion was exercised in good faith . . . ." Id. To establish a claim for conversion, "the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property. Id.

Viewing the evidence in Plaintiff's favor, Plaintiff established a claim for conversion. Specifically, there is evidence to support Plaintiff's assertion that (1) Plaintiff gave Defendant Guarantee more money than required under the Policies; (2) upon learning of this fact, Plaintiff demanded return of the excess payments; and (3) Defendant Guarantee

AO 72A
(Rev. 8/82)

refused to return the excess funds to Plaintiff. See Dkt. No. 61-4.

Defendant Guarantee argues that "[c]onversion is not a viable claim where there is nothing more than a failure by the defendant to pay money owed to the plaintiff." Dkt. No. 51, at 10. Defendant Guarantee is correct that, while "[t]angible personalty or specific intangible property may be the subject for an action for conversion," money is not generally subject to a conversion claim because it is fungible, intangible personalty. Trey Inman & Assoc., P.C. v. Bank of Am., N.A., 702 S.E.2d 711, 717 (Ga. Ct. App. 2010) (citation omitted). However, exceptions to this Georgia common law rule exist. For example, in Decatur Auto Ctr., Inc. v. Wachovia Bank, N.A., the Supreme Court of Georgia held that checks and other negotiable instruments can be the subject of a conversion claim. 583 S.E.2d 6 (Ga. 2003). In so holding, the court reasoned that "[c]onversion of checks is actionable because checks designate specific amounts of money for use for specific purposes." Decatur Auto Ctr., 583 S.E.2d at 9 (citations omitted).

Applying the rationale employed by the Supreme Court of Georgia in Decatur Auto Center, the allegedly excess funds that Plaintiff disbursed to Defendant Guarantee were specific and

24

identifiable.  See, e.g., Dkt. No. 61-7 (referencing specific

bank reference numbers for each disbursement).  Therefore, such

funds are proper subjects of Plaintiff's conversion claim.  See

Decatur Auto Ctr., 583 S.E.2d at 9 (recognizing "that a

plaintiff in a conversion action does not need to identify the

specific dollars and coins represented by the face value of

checks and other negotiable instruments" to sustain a conversion

claim); accord Trey Inman, 702 S.E.2d at 717 ("In this day and

age when funds are commonly transferred via wire and other

electronic means, we see no logical reason for treating specific

and identifiable funds that are transferred electronically . . .

differently from checks.").  Accordingly, to the extent that the

funds allegedly paid in excess of the proper amount owed were

specifically identifiable through identification to a particular

check, wire or electronic transfer, or similar modern transfer

technology, Plaintiff's conversion claim is not subject to

judgment as a matter of law.

　　For completeness, the Court notes that several Georgia

courts have held that a conversion claim in an inappropriate

method for claiming that money is due under a contract.  See,

e.g., Decatur Auto Ctr., 583 S.E.2d 6, 9 n.8 ("[A] cause of

action for conversion 'does not lie on account of a mere failure

to pay money due under a contract.'" (quoting <u>Morris v. Nat. W. Life Ins. Co.</u>, 430 S.E.2d 813, 814 (Ga. Ct. App. 1993))). However, Plaintiff is not claiming that Defendant Guarantee owes it unpaid money under the Policies. Plaintiff is claiming that it gave Defendant Guarantee more money that it owed, and that it is entitled to the return of those allegedly converted funds. Thus, the Georgia case law pertaining to paying money owed under a contract is inapplicable to Plaintiff's claim.

Because the evidence, when viewed in Plaintiff's favor, supports Plaintiff's conversion claim, Defendant Guarantee's motion for summary judgment on Plaintiff's conversion claim is **DENIED**.

## B. Claims Against Defendant Patriot

Plaintiff asserts a claim of fraud based on Defendants' alleged representations to the NCCI. <u>See</u> Dkt. No. 1-1 ¶¶ 34-37. Defendant Patriot seeks summary judgment on this claim. <u>See</u> Dkt. No. 43, at 6-7. Specifically, Defendant Patriot asserts that it did not insure Plaintiff, did not misrepresent claims and losses to Plaintiff or the NCCI, never induced Plaintiff to act or refrain from acting, and never intended to induce Plaintiff to act or refrain from acting. <u>See</u> <u>id.</u> at 6-7; <u>see</u>

26

also Dkt. Nos. 43-1; 48-2 (providing factual basis for Defendant Patriot's assertions). Plaintiff appears to agree. See Dkt. No. 57.

However, Plaintiff argues that summary judgment is inappropriate because Defendant Patriot is liable under a theory of veil-piercing or agency. See Dkt. No. 57. In turn, Defendant Patriot argues that Plaintiff failed to plead a veil-piercing or agency theory in its Complaint and should not be allowed to expand the Complaint to survive a motion for summary judgment. See Dkt. No. 71. Defendant Patriot is correct.

Plaintiff failed to allege facts in its Complaint sufficient to state a claim for veil-piercing or agency. See generally Dkt. No. 1-1. Thus, Plaintiff cannot raise such theories at this stage to defeat Defendant Patriot's motion for summary judgment. Accord Steed v. Wellington HealthCare Servs., LLC, 646 S.E.2d 517, 520 (Ga. Ct. App. 2007) (denying the plaintiff's attempt to present a veil-piercing theory at the summary judgment stage where she "framed her claims against [the defendant] as ones for direct liability" rather than failure to maintain the corporate form).

Moreover, even if Plaintiff had brought veil-piercing or agency-based claims against Defendant Patriot, the evidence

27

supporting such claims is insufficient to withstand Defendant Patriot's motion for summary judgment.

For example, Plaintiff asserts that Defendant Patriot admitted to holding monies related to Plaintiff's alleged overpayment to Defendant Guarantee. Dkt. No. 57, at 5. Plaintiff also asserts that Defendant Patriot managed various aspects of Defendant Guarantee's business, including demanding payment and answering questions related to the Policies and disputes at issue. Id. at 5-7. Plaintiff also asserts that Defendant Patriot provided deponents and affiants to help answer Plaintiff's questions regarding the disputes in this case. Id. at 7-8.

Even viewing these facts in Plaintiff's favor, the facts are insufficient to show that the corporate forms of Defendants Patriot and Guarantee were disregarded for an improper purpose. See Baillie Lumber Co. v. Thompson, 612 S.E.2d 296, 299 (Ga. 2005) ("Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused."). In fact, there is no evidence that the corporate forms were disregarded at all. There is only evidence that Defendant Patriot performed certain administrative functions for Defendant Guarantee.

Moreover, given that Defendant Guarantee employs Defendant Patriot to perform certain administrative tasks, the fact that they share a corporate representative to explain administrative matters does not destroy their corporate form. Without evidence sufficient to infer that the corporate form was abused, Plaintiff's veil-piercing claim fails as a matter of law.

Furthermore, "the theory of apparent or ostensible agency [applies] . . . if the plaintiff can establish (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury." Kissun v. Humana, Inc., 479 S.E.2d 751, 752 (Ga. 1997) (citation omitted). Plaintiff did not direct the Court to any evidence that Defendant Patriot held out Defendant Guarantee as its agent. Nor did Plaintiff direct the Court to any evidence that Plaintiff relied on such representations to its detriment. Without such facts, Plaintiff's agency claim fails as a matter of law.

In summary, the facts would not allow a factfinder to conclude that Defendant Patriot committed fraud against Plaintiff. Moreover, Plaintiff failed to allege facts

29

sufficient to assert a veil-piercing or agency claim and, thus, cannot raise such claims now.  Finally, even if Plaintiff alleged facts sufficient to assert a veil-piercing or agency claim, the facts would not allow a factfinder to conclude that Defendant Patriot is liable under either theory.  Consequently, Defendant Patriot's motion for summary judgment is **GRANTED**.

## C. Counterclaims Against Plaintiff

Defendant Guarantee brought breach of contract claims for each of the four (4) Policies.  Specifically, Defendant Guarantee asserts that Plaintiff failed to pay deductible premiums owed under the Policies.  See Dkt. No. 7, at 14-20.

Viewing the facts in Plaintiff's favor, no contract exists between Plaintiff and Defendant Guarantee.  In particular, the Court takes the following facts as true for the purposes of Defendant Guarantee's motion for summary judgment on its counterclaims:  First, the Policies are contracts between Defendant Guarantee and SAM I.  See Dkt. No. 30-7, at 1. Second, Plaintiff and SAM I are separate entities.  Compare id., at 1 (providing FEIN of SAM I), with id. at 146 (providing FEIN of SAM II).  Third, Defendant Guarantee billed SAM I for the

AO 72A
(Rev. 8/82)

deductible premiums owed. See Dkt. No. 48-2 ¶ 16. Fourth, SAM I allegedly failed to pay the premiums owed. See id. ¶¶ 14-16.

Viewing the facts in Plaintiff's favor, the Policies are not contracts between Defendant Guarantee and Plaintiff. Rather, the Policies are contracts between Defendant Guarantee and SAM I. If Plaintiff was not a party to the Policies, Plaintiff could not have breached the terms of those Policies as a matter of law. See O.C.G.A. § 9-2-20 ("As a general rule, an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent."). Consequently, Defendant Guarantee's motion for summary judgment on its counterclaims is **DENIED**.

D. Plaintiff's Motion for Summary Judgment

Plaintiff moved for partial summary judgment. See Dkt. No. 30. Specifically, Plaintiff seeks judgment "that [Plaintiff] did not owe any claims costs for any policy issued by [Defendant Guarantee] between January 1, 2008 and June 30, 2010." Id. ¶ 10. Thus, Plaintiff asks the Court to interpret part of the contract between Plaintiff and Defendant Guarantee.

31

Viewing the facts in Defendant Guarantee's favor, the Policies are not contracts between Plaintiff and Defendant Guarantee. The Policies state that SAM I is the insured. See Dkt. No. 30-7, at 1. The Policies state that Plaintiff is an additional named insured. Id. at 146. Viewing the plain text of the Policies, SAM I and Plaintiff are separate entities, each with their own FEINs. Compare id. at 1, with id. at 146. Thus, for the purposes of Plaintiff's motion for summary judgment, Plaintiff is not a party to the Policies.

Even if Plaintiff were a party to the Policies, viewing the facts in Defendant Guarantee's favor, Plaintiff was responsible for paying claims costs, including ALAE. In particular, the record can be construed to support Defendant Guarantee's assertion that the Loss Reimbursement Plan was incorporated into the Policies by reference. See, e.g., id. at 381 (noting that the policy premium is determined, in part, by the "rating plan"); Dkt. No. 36 ¶ 5 (connecting the policy provision to the particular Loss Reimbursement Plan allegedly incorporated into the Policies). The record can also be construed to support Defendant Guarantee's assertion that Plaintiff never elected Option B of the Loss Reimbursement Plan. See, e.g., Dkt. No.

32

48-2.  Thus, Option A was incorporated by default, and Plaintiff owed ALAE.  <u>See</u> Dkt. No. 36, at 25.

Viewing the facts in Defendant Guarantee's favor, Plaintiff was not a party to the Policies.  Moreover, even if Plaintiff was a party to the Policies, the Policies required Plaintiff to pay claims costs, including ALAE.  Consequently, Plaintiff's partial motion for summary judgment is **DENIED**.

## V.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is **DENIED** (Dkt. No. 30).  Defendant Patriot's Motion for Summary Judgment on Plaintiff's claims against it is **GRANTED** (Dkt. No. 43).  Defendant Guarantee's Motion for Summary Judgment on Plaintiff's claims against it is **DENIED** (Dkt. No. 51).  Defendant Guarantee's Motion for Summary Judgment is on its counterclaims is **DENIED** (Dkt. No. 48).

**SO ORDERED**, this 23rd day of August, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)