# In the United States District Court for the Southern District of Georgia Savannah Division

SULLIVAN'S ADMINISTRATIVE
MANAGERS II, LLC,

    Plaintiff,

vs.

GUARANTEE INSURANCE COMPANY,

    Defendant.

No. 4:12-CV-212

## ORDER

Before the Court is Defendant Guarantee Insurance Company's ("Guarantee") Motion for Summary Judgment Based on Res Judicata and Collateral Estoppel. Dkt. No. 111. Plaintiff Sullivan's Administrative Managers II, LLC ("SAM II") responded. Dkt. No. 117. Guarantee replied. Dkt. No. 124.

Then, the Court stayed proceedings pending resolution of a related Florida state-court case. Dkt. No. 135. The Florida appellate decision and mandate arrived at 2015's end. Dkt. Nos. 136-37. SAM II responded to Guarantee's notice of the mandate. Dkt. No. 138. Guarantee replied. Dkt. No. 140.

The Court denied SAM II's motion for a hearing on the mandate notice. Dkt. Nos. 139, 141. The parties filed a sur-response and sur-reply to the mandate notice. Dkt. Nos. 142-43.

The Motion is ready for resolution. For the reasons stated below, it is **GRANTED**.

## Background

Juliet famously asked, "What's in a name?" WILLIAM SHAKESPEARE, ROMEO AND JULIET, act 2, sc. 2. As this "Sullivan"-saturated story shows, "several years and multiple lawsuits."

**"Sullivan Administrative Managers I, LLC" Gets Insurance**

The Sullivan entities discussed here share the same ownership, and Martin R. Sullivan ("Mr. Sullivan") is their manager. Dkt. No. 111-18 at 3-4.

Four insurance policies issued by Guarantee name as their insured "Sullivan Administrative Managers I, LLC" ("SAM I"). Dkt. No. 111-15 at 15-21. These annual policies were in effect from 2008 to 2012. Id. at 15-20.

The policies' 2007 application identified the insured by a variety of mostly "Sullivan"-related names. Id. at 35-36.[1] The application was made by a Florida-based agent named Arthur J. Gallagher ("Gallagher"). Id.

At 2007's end, Gallagher's company instructed Guarantee that the named insured "is to read as follows: Sullivan Group

---

[1] Among them: "Sullivan's Staffing, Inc.," "Sullivan Staffing, Inc.," and "Sullivan Administrative Managers."

Financial, LLC[2][;][SAM I]; [SAM II[3]]; Sullivan Staffing, Inc.[; and] Simplifying Business, LLC." Id. at 37.

In February 2008, Gallagher's company told Guarantee that the first named insured should be SAM I, with SAM II and the rest as named insureds. Dkt. No. 111-16 at 22.

**Guarantee and SAM I Communicate Regularly**

Guarantee communicated with SAM I. Dkt. No. 111-22 at 7. In May 2010, Guarantee sent SAM I a letter discussing the terms of SAM I's insurance policy. Id. It referred to SAM I as "Sullivan Administrative Managers." See generally id.

SAM I reciprocated through Mr. Sullivan. Mr. Sullivan "acknowledged, agreed to and accepted" the May 2010 letter as SAM I's chairman. Id. at 9. He signed both a January 2011 security agreement and May 2011 collateral agreement with Guarantee as chairman of SAM I. Id. at 10-19. Mr. Sullivan also signed a January 2011 commercial promissory note from Guarantee on behalf of SAM I. Id. at 22-26.

**Guarantee Sues SAM I in Florida**

In February 2012, Guarantee sued SAM I, "a/k/a Sullivan's Administrative Managers, LLC, n/k/a Sullivan's Administrative Managers, Inc.," in Florida court, alleging breach of the four policies for failure to pay premiums. Dkt. No. 111-7 at 6-11.

---

[2] Sullivan's Administrative Managers, LLC absorbed this entity in 2003. Dkt. No. 111-19 at 1.
[3] SAM II was once known as "Sullivan Target Co." Dkt. No. 111-18 at 1, 5.

SAM I moved to dismiss on March 30, 2012, nowhere alleging anything relating to its corporate identity or SAM II. Dkt. No. 111-5. The court denied the motion in June 2012. Dkt. No. 111-6. SAM I moved to dismiss a second time on July 26, 2012, again keeping silent as to corporate identity and SAM II. Dkt. No. 111-7; see also Dkt. No. 111-8 (amending this motion on August 12, 2012, still without raising identity). This motion was also denied. Dkt. No. 111-9 (order of October 4, 2012).

SAM I then answered the complaint. Dkt. No. 111-10. None of SAM I's six affirmative defenses concerned its corporate identity. See id. at 4-5. They were: failure to mitigate damages, unclean hands, negligent misrepresentations, failure to state a cause of action for breach of contract, and the statute of limitations. Id.

**The Florida Courts Award Summary Judgment for Guarantee, SAM I's Corporate-Identity Argument Notwithstanding**

Guarantee moved for summary judgment. Dkt. No. 111-12. Guarantee pointed out Florida law requiring insureds to exhaust administrative remedies before raising defenses based on premium calculation. Id. at 16-17. Guarantee also responded to each of SAM I's affirmative defenses on the merits. Id. at 18-19.

In responding, SAM I finally argued that "each policy was issued to [SAM II], a company separate and distinct from [SAM I], which has never existed." Dkt. No. 111-13 at 2. SAM I also

argued against the applicability of Florida administrative-exhaustion requirements, claiming that Florida did not apply because Guarantee did not prove that the policies were delivered in Florida. Id. at 3.

The Florida trial court granted Guarantee summary judgment on all counts "as to liability" on November 4, 2013. Dkt. No. 111-14. The order styled the defendant as "[SAM I], a/k/a Sullivan's Administrative Managers, LLC, n/k/a Sullivan's Administrative Managers, Inc." Id.

Just under two weeks later, SAM I moved to amend the final judgment so that it would only be entered against SAM I. Dkt. No. 111-15 at 3. This motion again argued that SAM I "has never existed." Id. at 2-3. The trial court de facto denied it. See Dkt. No. 111-17 (listing all defendants in final judgment).

The Florida District Court of Appeal summarily affirmed on December 10, 2015. Dkt. No. 136-1.[4]

**While the Florida Litigation Is Ongoing, SAM II Sues Guarantee in Georgia**

Meanwhile, north of the Florida-Georgia line, the present lawsuit was already under way. On July 2, 2012—while SAM I was unsuccessfully attempting to dismiss the Florida case—SAM II

---

[4] It named the appellant SAM I. Id.; see also Dkt. No. 137-1 (giving same name in mandate). The reason why it gave this name is not apparent. SAM I did not move the appellate court to do so.
    SAM II does not raise any argument based on the appellate styling, and the Court "will not undertake to formulate [SAM II's] summary judgment arguments for it." Shears v. Mobile Cty. Revenue Comm'n, Civ. A. No. 07-0491, 2008 WL 4493234, at *8 (M.D. Ala. Oct. 3, 2008).

AO 72A
(Rev. 8/82)

sued Guarantee in Georgia. Dkt. No. 1-1 at 1. SAM II's claims centered on the same policies. Id. at 3. SAM II alleged negligent misrepresentations, breach of contract, fraud, and conversion. Id. at 6-9.[5] The matter was removed to the Court on August 15, 2012. Dkt. No. 1.

Following the Florida judgment, Guarantee filed the present Motion. Dkt. No. 111; cf. Dkt. No. 110 (modifying motions deadline). The parties briefed the matter. Dkt. Nos. 117, 124. The Court then stayed proceedings pending the appellate decision. Dkt. No. 135. That decision and mandate arrived at 2015's end. Dkt. Nos. 136-37. SAM II responded and Guarantee replied. Dkt. Nos. 138, 140. The Motion is now ripe for judgment.

**Legal Standard**

Summary judgment is granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A dispute . . . is 'genuine' if the 'evidence is such

---

[5] It also raised Georgia's RICO; this was dismissed. Id. at 9; Dkt. No. 29.

that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The Court interprets the evidence most favorably to the nonmoving party and draws all reasonable inferences in its favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000). The moving party must show a lack of evidence supporting the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). If it does, then the nonmovant has to present affirmative evidence proving that a genuine issue of fact exists. Anderson, 477 U.S. at 257.

## Discussion

### I. TWO SAM II BRIEFS ARE STRICKEN AS IMPROPER.

The Court first strikes as improper two briefs filed by SAM II: Plaintiff's Response to Defendant Guarantee Insurance Company's Notice of Mandate from the Florida Court of Appeal ("The Response"), dkt. no. 138, and Plaintiff's Reply to Defendant Guarantee Insurance Company's Reply to Plaintiff's Response to Notice of Mandate from the Florida Court of Appeal ("The Sur-Response"), dkt. no. 142.

The Response was untimely. Guarantee's Notice of Mandate was filed on December 30, 2015. Dkt. No. 137. The Response was not filed until March 7, 2016. Dkt. No. 138. This was over two and a half months later. The Court's local rules require all responses to be submitted within fourteen days. S.D. Ga. L. R.

AO 72A
(Rev. 8/82)

7.5. SAM II made no attempt whatsoever to justify its tardiness. It did not even move the Court to accept the untimely filing. The Court thus **STRIKES** the Response. See Fed. R. Civ. P. 6(b)(1)(B) (requiring motion for extension of time demonstrating good cause and excusable neglect if extension sought after time has expired).

The Sur-Response is also improper. To be clear, this district does not cap the number of reply briefs. Royal v. N.Y. Life Ins. Co., No. 6:10-CV-104, 2015 WL 339781, at *5 (S.D. Ga. Jan. 26, 2015). But "[SAM II's] sur reply is not a sur reply at all. Rather, it is a resubmission of [SAM II's] response to [Guarantee's] motion for summary judgment." Id. at *6. In fact, the Sur-Response goes far beyond SAM II's timely summary judgment response brief. The earlier brief was three-and-a-fifth pages long and had no attachments. Dkt. No. 117. The Sur-Reply appended 107 pages of exhibits, including a new affidavit. Dkt. No. 142. The Sur-Reply was nothing less than an "attempt[] to take another bite at responding." Royal, 2015 WL 339781, at *6.

It was thus an abuse of the Court's liberality. The Court bans "reply" briefs that go beyond rebuttal, because not doing so would be an invitation to "attorneys to submit bare-bones responses as a sort of temporal bookmark by which they could preserve their right to respond while taking more time than the

AO 72A
(Rev. 8/82)

Rules allow to gather evidence and to formulate an argument." Id. at *6-7. That is what SAM II tried to do by following up its scanty, un-evidenced summary judgment response with the rather hefty Sur-Reply. As Judge Edenfield aptly put it, "[SAM II] chose to attempt to pull the wool over the Court's eyes and take more time than was allowed in responding to Defendant[']s[] motion for summary judgment." Id. at *6.

But "[s]he is not tricked who knows [s]he is being tricked." Id. Therefore, the Court **STRIKES** the Sur-Response.

**II. GUARANTEE IS ENTITLED TO SUMMARY JUDGMENT.**

The Court now **GRANTS** Guarantee's Motion, as SAM II's case is barred by res judicata and collateral estoppel. The Court determines the preclusive effect of a Florida judgment using Florida law. See Bennett v. Zurich Am. Ins. Co., No. CV 512-061, 2013 WL 3048493, at *3 (S.D. Ga. June 17, 2013). Florida's res judicata rule is that "a judgment on the merits bars a subsequent action between the same parties on the same cause of action." State v. McBride, 848 So.2d 287, 290 (Fla. 2003). Of course, res judicata also extends to "claims that could have been raised in the prior action." Id.

Florida defines collateral estoppel as a bar on "identical parties . . . relitigating the same issues that have already been decided." Id. at 290 (quoting Dep't of Health & Rehab. Servs. v. B.J.M., 656 So.2d 906, 910 (Fla. 1995)).

AO 72A
(Rev. 8/82)

What these two doctrines boil down to is that SAM II's claim is barred if the Florida state proceedings featured: (1) the same parties; (2) the same causes of action; and (3) a judgment on the merits. They did.

**A. The Florida Suit Featured the Same Parties.**

The Florida proceedings featured the same parties as appear here, because SAM I is just a misnomer for SAM II. Mr. Sullivan admits that SAM II contracted with Guarantee for the four policies. Dkt. No. 62-1 ¶ 4. SAM II's federal employer identification number appeared on the front of each. Id. ¶ 5. Mr. Sullivan admits that SAM I has never existed. Id. ¶ 3. SAM I had no reality other than as the primary named insured on SAM II's policies. Thus, SAM I was a mere misnomer for SAM II.

It does not matter that Guarantee sued "SAM I." "[P]ersons who are sued by the wrong name may nevertheless appear and defend the action, and if they fail to object to the misnomer by appropriate pleading or motion they may be bound by a judgment . . . ." RHPC, Inc. v. Gardner, 533 So.2d 312, 314 (Fla. Dist. Ct. App. 1988); see also Royal Atl. Health Spa, Inc. v. B.L.N., Inc., 677 So.2d 1385 (Fla. Dist. Ct. App. 1996). SAM II appeared and defended the Florida case. SAM II did not object to its misnomer until it defended against summary judgment. Dkt. No. 111-13 at 2. That objection was not sustained. See Dkt. No. 111-14. The Florida trial court

AO 72A
(Rev. 8/82)

declined to limit its judgment to the fictitious SAM I, despite SAM II's request. See Dkt. No. 111-17. SAM II is thus the same party as SAM I.

Even assuming that SAM I were not SAM II's alter ego, and so SAM II were not "technically not a party" to the Florida case, SAM II still "had an interest in the prior litigation and the right to participate therein." Red Carpet Corp. of Panama City Beach v. Roberts, 443 So.2d 377, 380 (Fla. Dist. Ct. App. 1983). After all, the insurance policies properly belonging to SAM II were at issue. Besides, SAM II is "controlled by the individual[] involved in the prior action," that is, Mr. Sullivan, and "the events alleged to have resulted in injury to [SAM II] are the same as those which were or could have been alleged in the former action." Id.; see also discussion infra.

SAM I and SAM II are the same party. See id.

**B. The Florida Suit Featured the Same Causes of Action.**

Whatever claims SAM II could bring here were or could have been raised in the Florida proceedings. Here, SAM II alleges: (1) negligent misrepresentations; (2) fraud; (3) breach of contract; and (4) conversion. Dkt. No. 1-1 at 6-9.

(1) Negligent misrepresentations were actually raised in the Florida case. Dkt. No. 110-10 at 4.

(2) SAM II's fraud claim here is based on "willful[] and/or negligent[] misrepresent[ations]." Dkt. No. 1-1 at 8. Again,

11

negligent misrepresentations were raised; further, "SAM I" based its unclean hands defense on "[Guarantee's] . . . false representations." Dkt. No. 110-10 at 4.

(3) "SAM I" could have counterclaimed breach of contract.

(4) SAM II's conversion claim alleges overbilling and "refusing to return [SAM II's] overcharged premium." Dkt. No. 1-1 at 8. This echoes its breach of contract claim, see id. at 7, and so it also could have been counterclaimed.

SAM II argues that its claims could not have been litigated in the Florida suit because the court there "relied upon a[ Florida] administrative exhaustion doctrine that barred SAM I from even raising its claims as defenses." Dkt. No. 117 at 3.

This may not be true, as the court's order merely said that summary judgment was granted. Dkt. No. 111-14.

Even if it were, this objection is without merit. In resisting summary judgment, "SAM I" specifically argued that Florida law did not apply to the dispute. Dkt. No. 111-13 at 3. It also argued against barring its defenses for failure to exhaust administrative remedies. Id. at 6-12.

There are two possibilities. One is that "SAM I" persuaded the Florida court. If that happened, then that court rejected "SAM I's" defenses, and res judicata and estoppel clearly apply.

The other possibility is that the Florida court barred "SAM I's" defenses based on Florida law. Is there, then, a genuine

AO 72A
(Rev. 8/82)

issue of material fact as to whether SAM II could not have raised claims available to it here in the earlier proceeding?

There is not. Even in Georgia, Florida law would govern this dispute, so administrative exhaustion would apply. The Court would follow Georgia choice-of-law doctrine. See Wausau Underwriters Ins. Co. v. Danfoss, LLC, No. 2:14-CV-14420, 2015 WL 6456569, at *6 ("[A]pplying the substantive law of the forum state means applying the choice-of-law rules of the forum state, not merely concluding that the forum state's law applies . . . ."). Georgia adheres to the lex loci contractus rule in determining choice-of-law for contract disputes. See, e.g., Lima Delta Co. v. Glob. RI-022 Aerospace, Inc., 789 S.E.2d 230, 235 (Ga. Ct. App. 2016). Under Georgia's interpretation of that rule, the law of the place where a contract was delivered governs disputes arising under it. Id.; Fed. Ins. Co. v. Nat'l Dist. Co., 417 S.E.2d 671 (Ga. Ct. App. 1992) (holding rule applies to insurance contract with named insureds in multiple states).

The undisputed evidence showed that the policies at issue were delivered in Florida:

(1) The policies were negotiated on SAM II's behalf by Gallagher's company, which is located in Florida. Dkt. No. 30 at 2 ("The policies were negotiated by Arthur Gallagher, Inc. on behalf of SAM II."); Dkt. No. 30-1 ¶¶ 1-3 (describing the

negotiations); Dkt. No. 111-24 at 3-4 (giving Gallagher's company's address as in Florida).

(2) Gallagher's company discussed final touches on the policies with Guarantee, like the ordering of the named insureds and their corporate names. Dkt. No. 111-24 at 3-5.

(3) The negotiations resulted in coverage for SAM II. Dkt. No. 30-2 at 2.

(4) SAM II renewed its coverage. Id. at 3.

(4) Mr. Sullivan communicated with Guarantee regarding his coverage. Dkt. No. 111-22.

(5) The policies were not delivered in Georgia. Dkt. No. 60, 16:05-06; Dkt. No. 62-1 at 2.

This is all strong evidence that the policies were delivered to Gallagher's company in Florida. Delivery of policies to the insured's agent is delivery to the insured. See O.C.G.A. § 10-6-58 ("Notice to the agent of any matter connected with his agency shall be notice to the principal."); Essex Ins. Co. v. Zota, 985 So.2d 1036, 1050 (Fla. 2008); cf. Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Ga., 337 F. Supp. 2d 1339, 1353-54 (N.D. Ga. 2004) ("Defendants, through the acts of their agent, had knowledge of the Certificates of Insurance. This is true even if defendants did not actually receive copies of the Certificates . . . .").

SAM II claims that Guarantee did not even deliver the policies to Gallagher. Dkt. No. 116 at 2. But its only evidence is the following statement:

> I can't prove . . . where we delivered the policies . . . . Guarantee would [have] give[n] the policies to Gallagher. Gallagher is in Clearwater, Florida. . . . I don't have . . . evidence that [the policies] were delivered to Gallagher in Florida. But that is the normal course of business for our clients. [The policies] certainly weren't delivered in Georgia . . . .

Dkt. No. 60, 15:17-16:06.

This is not evidence that the policies were never delivered to Gallagher. Quite the opposite, it further suggests that they were. This statement thus fails to satisfy SAM II's burden of resisting summary judgment with affirmative evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).

Guarantee has presented strong evidence that the policies were delivered in Florida, and SAM II lacks any affirmative evidence to the contrary. There is no genuine dispute of material fact as to this point.

Thus, under lex loci contractus, Florida law—administrative exhaustion rule and all—would govern these proceedings. See Wausau Underwriters Ins. Co., 2015 WL 6456569, at *1 n.1 (holding that the court would apply whatever administrative

exhaustion requirements may have barred insured's defenses under law of state determined pursuant to <u>lex loci contractus</u>).[6]

The prior Florida judgment was not based on any bar to defenses that could be lowered here. Whatever claims could be raised here could have been raised in the earlier proceeding.

### C. The Florida Suit Featured Judgment on the Merits.

Lastly, the Florida court entered judgment on the merits. For a judgment to be "on the merits," there only has to be a "statement that clearly shows that the issue was considered by the court on the merits and relief was denied." <u>Topps v. State</u>, 865 So.2d 1253, 1258 (Fla. 2004). The judgment here explicitly stated that summary judgment was granted "as to liability." Dkt. No. 111-14. This suffices.

### Conclusion

"[T]hat which we call a rose [b]y any other name would smell as sweet." WILLIAM SHAKESPEARE, ROMEO AND JULIET, act 2, sc. 2. Conversely, "SAM I" can call itself "SAM II" all it likes, but that does nothing to lessen the preclusive effect of the Florida judgment against it. Res judicata and collateral estoppel bar this action.

---

[6] Georgia will not give effect to another state's law if that law violates Georgia public policy. <u>Fed. Ins. Co. v. Nat'l Dist. Co.</u>, 417 S.E.2d 671, 674 (Ga. Ct. App. 1992). There does not appear to be any Georgia public policy against requiring insureds to exhaust administrative remedies before raising defenses.

AO 72A
(Rev. 8/82)

For the foregoing reasons, Guarantee's Motion for Summary Judgment Based on Res Judicata and Collateral Estoppel, (dkt. no. 111), is hereby **GRANTED**.

**SO ORDERED**, this 11TH day of October, 2016.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)